PROSKAUER ROSE LLP
Joseph C. O'Keefe (NJ Bar No. 049401991)
Howard Z. Robbins (*pro hac vice* application to be filed)
Jonathan R. Gartner (*pro hac vice* application to be filed)
Eleven Times Square
New York, New York 10036
T: (212) 969-3000
F: (212) 969-2900
jokeefe@proskauer.com
hrobbins@proskauer.com
jgartner@proskauer.com
*Attorneys for Plaintiffs Major League Soccer, L.L.C and Red Bull New York, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAJOR LEAGUE SOCCER, L.L.C. and RED BULL NEW YORK, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT A. PEARSON and ARGENTINA FUTBOL TOURS LLC, <br><br> Defendants. | Civil Action No. _____ <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Major League Soccer, L.L.C. ("MLS") and Red Bull New York, Inc. ("RBNY"), by their attorneys, Proskauer Rose LLP, hereby allege as follows:

**NATURE OF THE CASE**

1.  This Complaint against Defendants Scott A. Pearson ("Pearson") and Argentina Futbol Tours, LLC ("Argentina Futbol Tours") (together, "Defendants"), arises from Defendants' tortious interference with MLS's and RBNY's contractual relationship with Alejandro Romero

Gamarra (a/k/a "Kaku"), an elite soccer player under contract with MLS and assigned to play for the New York Red Bulls (the "Red Bulls"), a club within MLS.

2. In early 2018, RBNY paid a substantial transfer fee – of approximately $6 million – to Club Atlético Huracán ("Club Huracán"), Kaku's former club in Argentina, so that MLS could obtain the rights to sign Kaku as a "designated player" to be assigned to the Red Bulls.

3. After MLS and RBNY purchased Kaku's transfer rights from Club Huracán, Kaku and MLS agreed to a Standard Player Agreement and Schedule (together, the "SPA"), executed by the parties in February of 2018. *See* **Exhibit A**. The SPA provided for a contractual term of three guaranteed years (2018, 2019, and 2020), followed by two option years (2021 and 2022), which could be exercised unilaterally at the discretion of MLS.

4. At the time Kaku agreed to the SPA, he was accompanied and represented by Pearson. Through Argentina Futbol Tours, Pearson served as Kaku's agent and regularly communicated with MLS, the Major League Soccer Players Association (the "Union" or "MLSPA"), and RBNY on behalf of Kaku throughout his tenure in MLS.

5. On March 3, 2020, MLS notified Kaku, in writing, that it was exercising his 2021 option year, by personally handing a copy of the "option exercise letter" to Kaku at the RBNY practice facility in Whippany, New Jersey following training. A representative from RBNY also notified Pearson via email, on both February 28, 2020 and June 22, 2020, that MLS had exercised Kaku's 2021 option year. *See* **Exhibit B** and **Exhibit C**.

6. Although Pearson knew that MLS had validly extended Kaku's Agreement with MLS through December 31, 2021, after learning of this extension, Pearson proceeded to offer Kaku's services to clubs outside MLS for a contract beginning in 2021.

7. On information and belief, Pearson knowingly and intentionally conveyed false information regarding the validity of Kaku's contract extension to Kaku, the Union, and clubs outside MLS, and improperly asserted that Kaku would be a free agent able to enter into a new contract as of January 2021.

8. On January 15, 2021, at Pearson's urging, Kaku breached his SPA by signing a contract with Al-Taawoun FC of the Saudi Professional League.

9. On information and belief, Defendants facilitated and negotiated Kaku's contract with Al-Taawoun and profited from Kaku's breach of his SPA with MLS.

10. During his tenure in MLS, RBNY declined multiple lucrative transfer offers from clubs outside MLS of as much as $6 million for the rights to Kaku's player contract.

11. If not for Pearson's intentional and improper interference, MLS and RBNY would have continued to enjoy the benefits of Kaku's services and/or had the opportunity to transfer Kaku's rights to a non-MLS club in exchange for a multi-million dollar transfer fee.

12. As a result of Defendants' tortious interference with Kaku's SPA, MLS and RBNY have sustained, and continue to sustain, millions of dollars in damages.

## PARTIES

13. Plaintiff MLS, a professional soccer league, is a Delaware Limited Liability Company with a principal place of business at 420 Fifth Avenue, New York, New York 10018. MLS centrally owns all teams, which are then operated by separate investor entities. Additionally, MLS is the signatory employer on contracts with all MLS players, who are then assigned to play for specific teams within MLS.

14. Plaintiff RBNY, the entity that operates the New York Red Bulls soccer club in MLS, is incorporated in the State of New Jersey with a principal place of business at Red Bull

Arena, located at 600 Cape May Street, Harrison, New Jersey 07029. RBNY also operates a training facility located in Whippany, New Jersey.

15. Defendant Scott A. Pearson, an individual who holds himself out as a soccer agent (or "football intermediary"), is a United States Citizen and resident of Florida, residing at 3118 Belmore Road, Tampa, Florida 33618. Pearson also holds himself out as President of Argentina Futbol Tours LLC.

16. Defendant Argentina Futbol Tours LLC ("Argentina Futbol Tours") is a Florida Limited Liability Company, founded and operated by Pearson, as his alter ego, with a principal place of business located at 3118 Belmore Road, Tampa, Florida 33618. Through Pearson, Argentina Futbol Tours purports to offer, among other things, "professional scouting and intermediary services."

## JURISDICTION AND VENUE

17. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

18. This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(a), because Pearson, in his capacity as Kaku's representative and President of Argentina Futbol Tours, had purposeful and meaningful contacts with this forum by traveling to RBNY's training facility in Whippany, New Jersey, RBNY's headquarters in Harrison, New Jersey, and tortiously interfering with the performance of Kaku's SPA in New Jersey.

**FACTS**

19. In late 2017, Pearson, holding himself out as a player agent, traveled to RBNY's training facility in New Jersey, where he approached Red Bulls Manager Jesse Marsch and offered to help the club identify elite young players in Argentina.

20. With Pearson's encouragement, in late-November 2017, Marsch and Red Bulls Sporting Director Denis Hamlett traveled to Argentina to scout players that Pearson claimed to represent, including Kaku.

21. During this trip, Marsch and Hamlett expressed an interest in signing Kaku. Pearson advised Marsch and Hamlett that Kaku had recently fired his "former" agent, Marcel Simonian, and that Kaku was now represented jointly by Pearson and his colleague, Gustavo Casasola.

22. Based on these representations, RBNY granted Pearson and Casasola a mandate to negotiate a transfer fee arrangement between RBNY and Kaku's then-current team, Club Huracán.

23. After negotiations, brokered by Pearson and Casasola, RBNY agreed to pay a transfer fee of $5.5 million to Club Huracán for MLS to obtain the rights to sign Kaku as a "designated player" to be automatically assigned to the Red Bulls. On top of the $5.5 million transfer fee, RBNY intended to pay an additional "agent fee" of approximately $600,000 to Pearson and Casasola, as Kaku's agents, for their role brokering the transaction as Kaku's agents.

24. After the parties reached a tentative agreement, Simonian came forward, claiming still to be Kaku's agent. Simonian threatened to bring civil and criminal claims in Argentina against all parties involved unless the full agent fee was paid to him, rather than to Pearson and Casasola.

25. In February 2018, Pearson and Casasola agreed to waive any right to an agent fee from RBNY. As a result, RBNY paid the full agent fee to Simonian.

26. Following completion of the transfer agreement with Club Huracán, Kaku, accompanied by Pearson, traveled to New Jersey to tour RBNY facilities and finalize the terms of his SPA with MLS.

27. During this trip, Pearson not only represented Kaku's interests when the SPA was finalized, but also accompanied Kaku on his flight from Argentina to New Jersey's Newark Liberty International Airport and stayed with Kaku at a local hotel in New Jersey.

28. Kaku's SPA, which was executed on February 16, 2018, and the corresponding Schedule to his SPA, which was signed on February 6, 2018, included three guaranteed contract years (calendar years 2018, 2019, and 2020), expiring on December 31, 2020, followed by two option years (calendar years 2021 and 2022) that could be exercised unilaterally in MLS's discretion. If the 2021 and 2022 options were exercised, the SPA would expire on December 31, 2021 and December 31, 2022, respectively.

29. Upon signing his SPA with MLS, as contemplated by the "designated player" status, Kaku was assigned to play for the Red Bulls.

30. Less than a year into Kaku's contract with MLS, Pearson began shopping Kaku's services to clubs outside MLS and exploring potential transfer opportunities.

31. On information and belief, Pearson was determined to force RBNY and MLS to quickly transfer Kaku's contract to a club outside MLS as a way of generating a transfer fee to replace the $600,000 agent fee that had gone to Simonian, rather than himself, in connection with Kaku's 2018 transfer to MLS.

32. In early 2019, Pearson lobbied MLS and RBNY to transfer Kaku to Club América, a prominent football team based in Mexico City, Mexico, for a fee of $6 million.

33. Pearson and Casasola would have obtained a large agent fee if RBNY and MLS agreed to transfer Kaku to Club América.

34. RBNY, however, believed Kaku's value was greater than the proposed $6 million transfer fee and – to Pearson's disappointment – RBNY declined the offer from Club América.

35. Dismayed by the lack of progress in transfer negotiations, in early 2020, Pearson indicated to RBNY representatives that he was advising Kaku that he was under no obligation to honor any unilateral exercise of the extension years (2021 and 2022) in the SPA.

36. Aware that Pearson planned to challenge the validity of any exercise of the SPA's option years, MLS and RBNY resolved to exercise Kaku's option for 2021 long before the December 1, 2020 contractual deadline to do so.

37. In accordance with the terms of the SPA and its accompanying Schedule, on March 3, 2020, MLS exercised the 2021 option year, when Hamlett personally handed a letter to Kaku informing Kaku of MLS's decision to exercise his option year.

38. In addition to directly handing the option exercise letter to Kaku, Hamlett also emailed the option exercise letter to Pearson on February 28, 2020 and again on June 22, 2020 (because Pearson had not responded to the February 28 email). *See* **Exhibit B** and **Exhibit C**.

39. Pearson referred to the option exercise letter on March 12, 2020, in a WhatsApp communication with Red Bulls Head of Sport Kevin Thelwell. Specifically, Pearson stated that "we are happy to have the conversation regarding the possibility of a contract renewal," but that he "didn't want to respond to the email we received in legal terms as we don't want to distract

Kaku." Pearson also reiterated that "we want to come to a bilateral agreement in the event we decide to renew [Kaku's] contract with Red Bull."

40. On July 11, 2020, Pearson replied to Hamlett's June 22 email (which had attached the option exercise letter), but Pearson's email response (annexed as **Exhibit D**) stated that he refused to accept the validity of a unilateral contract extension:

> *Hi Denis,*
>
> *I hope this message finds you and the lads doing well in Orlando.*
>
> *As you are aware, Kevin [Thelwell] reached out to me in hopes of renewing Kaku's contract with Red Bull, as his guaranteed 3 year contract expires December 31st. The original plan was for Gustavo and I to fly up to NY and discuss this possibility face to face, but this pandemic prevented us from traveling.*
>
> *Our hopes are to try and get up to NY once flights are permitted out of Argentina which we believe will open starting September 1st. Kaku is interested in continuing his career with your organization if the terms of his contract extension are of a bilateral agreement.* ***But, my client will not accept under any circumstances a unilateral extension of his contract and prefers that the terms are consensual for all parties.***
>
> *We are glad to hear that Kevin would like to host us for discussions of a potential renewal of Kaku's contract and we hope that both parties can come to an agreement in the coming months.*
>
> *Take care, hope to see you soon and best of luck today against Atlanta!*
>
> *Regards,*
>
> *Scott Pearson*

41. In October 2020, Pearson traveled to New Jersey to visit Kaku and requested in-person meetings with RBNY representatives to discuss Kaku's contract situation. Although

8

Pearson was physically present in New Jersey, Pearson and RBNY representatives ultimately met remotely due to the COVID-19 pandemic.

42. Pearson continued to negotiate with RBNY until late December 2020 regarding the potential transfer of Kaku to clubs outside of MLS, with a substantial portion of these negotiations focused on the size of the corresponding agent fee that Pearson would receive in conjunction with a transfer.

43. In December 2020, talks broke down regarding a potential transfer to Club Tijuana Xoloitzcuintles de Caliente ("Club Tijuana"), a football club based in Mexico, due to the high agent fee that Pearson and Casasola demanded in connection with the proposed transfer. If the transfer had occurred, RBNY would have received a transfer fee in the millions of dollars for the rights to Kaku's contract.

44. After the Club Tijuana deal fell through, in late December 2020, Pearson asserted to RBNY that he considered the unilateral extension of Kaku's SPA to be invalid and that he would proceed to shop Kaku's services as a free agent if RBNY did not reconsider a transfer arrangement.

45. Having not collected an agent fee after years representing Kaku, Pearson stated to Thelwell on December 28, 2020 (in a WhatsApp message) that he and Casasola were "finished working for free. We are willing to negotiate our compensation, but your organization needs to recognize and compensate us for our work."

46. On December 29, 2020, after RBNY declined to reconsider a deal with Club Tijuana, Pearson informed Thelwell that it is "very unlikely you will see Kaku for preseason as he is a free agent January 1st due to your club's failure to notify the player correctly of the option."

47. In December 2020 and January 2021, Pearson communicated with the Union regarding Kaku's contract status, both directly and through Kaku (who forwarded an email that Pearson had drafted for him to send to the Union).

48. After being initially informed by the Union that Kaku's contract had been validly extended through 2021, on information and belief, Pearson advised Kaku to falsely claim that Kaku had not received the option exercise letter on March 3, 2020. Pearson also took the position that he was not Kaku's agent and, therefore, was not authorized to receive the option exercise letter on Kaku's behalf.

49. In January or February 2021, Pearson scrubbed the websites for Argentina Futbol Tours and an entity called "Futbol Partners," as well as various social media accounts (including LinkedIn, Twitter, and YouTube), to remove references to himself as Kaku's agent.

50. Based on the false information provided by Pearson, in January 2021, the Union reversed course and took the position that Kaku was out of contract and free to sign with another club as a free agent.

51. Despite warnings from MLS and RBNY that any contract with a foreign club would violate Kaku's contract with MLS and the Collective Bargaining Agreement ("CBA") between MLS and the Union, Pearson continued to offer Kaku's services on the free agent market.

52. On or about February 15, 2021, Kaku began playing for Al-Taawoun, in further breach of his SPA and the CBA.

53. On February 15, 2021, MLS commenced an arbitration proceeding against the Union (as Kaku's collective bargaining representative) under Kaku's SPA and the CBA concerning Kaku's breach of his SPA.

54. An arbitration hearing was held before Impartial Arbitrator Shyam Das on March 3, 2021 and March 12, 2021. Kaku participated in the arbitration hearing, during which the Union represented his interests.

55. On April 2, 2021, Arbitrator Das issued an Opinion and Award in favor of MLS, finding that "Kaku has breached his SPA with MLS by signing with and playing for a team outside MLS in 2021, because MLS effectively exercised its option to extend his contract through December 31, 2021." *See* **Exhibit E**.

56. The Arbitrator's Opinion and Award, which confirms the existence of a valid contract between Kaku and MLS through 2021, ordered Kaku not to play, attempt to play or threaten to play soccer for any team other than a Team in Major League Soccer."

57. Despite the Arbitrator's Opinion and Award, Kaku, as of this date, continues to play for Al-Taawoun in Saudi Arabia and has declined to report to the New York Red Bulls for the 2021 season.

58. Because of Defendants' tortious interference with Kaku's SPA, RBNY was forced to pay a transfer fee of approximately $5.5 million to a foreign club to secure the rights to a player, with comparable skill and ability to Kaku, who was deemed to be a suitable replacement for Kaku on the Red Bulls' roster.

59. MLS filed a petition to confirm the Arbitrator's Opinion and Award in the United States District Court for the Southern District of New York on May 12, 2021, in Civil Action No. 1:21-cv-04258-VM [Dkt. No. 1], which is pending.

## **FIRST CAUSE OF ACTION**
### (Tortious Interference)

60. Plaintiffs repeat and reallege Paragraphs 1 through 59, above, as if fully set forth herein.

61. At all relevant times, a valid contract existed between Kaku and MLS, specifically the SPA and Schedule, whereby Kaku was contractually bound to MLS for a three year guaranteed term, plus an additional two option years that could be exercised at the sole discretion of MLS.

62. At all relevant times, Pearson, had knowledge of the SPA and Schedule between Kaku and MLS and the central terms therein, including the two additional option years that could be exercised at the sole discretion of MLS.

63. Denis Hamlett directly informed Pearson, in emails sent on February 28, 2020 and June 22, 2020, that MLS had exercised the option to extend Kaku's contract through 2021. Pearson acknowledged receipt of this email through his response dated July 11, 2020.

64. Although he was aware that MLS had validly extended Kaku's contract through December 31, 2021, Pearson intentionally and without justification interfered with, and caused Kaku to breach, his SPA and Schedule with MLS. Specifically, Pearson instructed and induced Kaku to breach his SPA and Schedule and then, on information and belief, facilitated Kaku's competing employment agreement with Al-Taawoun.

65. As a direct and proximate result of Pearson's tortious interference, MLS and RBNY have been deprived of Kaku's playing services, as well as opportunities to transfer Kaku's contractual rights to a club outside MLS in exchange for a significant transfer fee.

Kaku's absence has also forced MLS and RBNY to incur substantial expenses to replace Kaku on the Red Bulls roster.

66.    Kaku's breach, due to Pearson's actions, have also required MLS and RBNY to expend substantial resources on the arbitration proceeding and petition to confirm the Arbitrator's Opinion and Award, in which the Arbitrator ruled in favor of MLS.

67.    Pearson's wrongful conduct has caused damages to MLS and RBNY in an amount to be determined at trial, but are believed to be in excess of $6 million.

68.    The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm MLS and RBNY such that punitive and/or exemplary damages should be awarded.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MLS hereby demands judgment in its favor against Defendants as follows:

    A.    Compensatory damages, resulting from Defendants' tortious interference with Kaku's SPA, in an amount to be determined at trial, believed to be in excess of Six Million Dollars ($6,000,000.00); and

    B.    An award of Plaintiffs' costs and expenses, including reasonable attorneys' fees, sustained as a result of Defendants' tortious interference; and

    C.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs MLS and RBNY hereby demand a trial by jury on all issues.

Dated: July 21, 2021

                                      Respectfully submitted,

                                      /s/*Joseph C. O'Keefe*
Joseph C. O'Keefe (NJ Bar No. 049401991)
Howard Z. Robbins (*pro hac vice* application to be filed)
Jonathan R. Gartner (*pro hac vice* application to be filed)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
jokeefe@proskauer.com
hrobbins@proskauer.com
jgartner@proskauer.com
*Attorneys for Plaintiffs Major League Soccer, L.L.C. and Red Bull New York, Inc.*